UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KELLY MENDOZA                          CIVIL ACTION

VERSUS                                 NO: 15-1257

LAFARGE NORTH AMERICA,                 SECTION: "J"(4)
INC. ET AL.

## ORDER & REASONS

Before the Court is a *Motion in Limine to Exclude the Medical Record Review and Trial Testimony of David W. Aiken, Jr., M.D.* **(Rec. Doc. 16)** filed by Plaintiff, Kelly Mendoza, and an opposition thereto (Rec. Doc. 21) filed by Defendants, Lafarge North America Inc. and National Union Fire Insurance Company of Pittsburgh, PA. Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **DENIED**.

## FACTS AND PROCEDURAL BACKGROUND

This litigation derives from an automobile accident that occurred on October 24, 2014. (Rec. Doc. 1, at 2-3.) The accident was between an automobile driven by Plaintiff and a cement-mixing truck driven by a Lafarge employee. *Id.* at 2. The cement-mixing truck was owned by Lafarge and insured by National Union. *Id.* at 3. Following the accident, Plaintiff was seen by three

neurosurgeons[1]: Dr. Rand Voorhies, Dr. Andrew Todd, and Dr. Manish Singh. (Rec. Doc. 16-1, at 3.) Ultimately, Dr. Singh performed surgery on Plaintiff's neck on April 16, 2015. (Rec. Doc. 16-3, at 3.)

On April 21, 2015, Plaintiff filed suit against Lafarge and National Union, claiming that she suffered severe personal injuries as a result of the collision. (Rec. Doc. 1, at 4-5.) The Complaint alleges that the Defendants' negligence caused Plaintiff's injuries. *Id.* at 3-4. The parties entered a stipulation that Defendants are liable to Plaintiff for causing the accident. (Rec. Doc. 9.)

Defendants engaged Dr. David W. Aiken, Jr., an orthopedic surgeon, to review Plaintiff's medical records and provide an opinion on Plaintiff's medical condition as well as whether the accident in question caused the need for Plaintiff's neck surgery. (Rec. Doc. 21, at 2.) Dr. Aiken reviewed the medical records related to Plaintiff's injuries allegedly sustained in the accident on October 24, 2014, as well as medical records dating back to an injury she allegedly sustained at work in 2009. *Id.* On December 7, 2015, after reviewing Plaintiff's medical records, Dr. Aiken authored a "Medical Record Review." (Rec. Doc. 16-2.) In his record review, Dr. Aiken concluded that Plaintiff's neck

---

[1] Defendants note that Dr. Todd is not a neurosurgeon but rather an orthopedic surgeon. For purposes of the instant motion, this distinction is irrelevant.

surgery was not related to the accident caused by Defendants on October 24. *Id.* at 7.

Plaintiff filed the instant *Motion in Limine to Exclude the Medical Record Review and Trial Testimony of David W. Aiken, Jr., M.D.* **(Rec. Doc. 16)** on December 29, 2015. Defendants opposed the motion on January 5, 2016. Although Plaintiff requested oral argument, the motion is now before the Court on the briefs, as the Court determined that oral argument was unnecessary.

## PARTIES' ARGUMENTS

Plaintiff contends that the opinions set forth in Dr. Aiken's "Medical Record Review" and any testimony arising from that record review that might be offered at trial should be excluded under Rules 403 and 702 of the Federal Rules of Evidence. (Rec. Doc. 16-1, at 1.) Plaintiff argues that Dr. Aiken's opinions are based exclusively on a defense-biased record review and are not only prejudicial, but also unreliable because they are not founded upon a medically sufficient evaluation of Plaintiff's medical condition. *Id.* First, Plaintiff claims that Dr. Aiken's opinions "fall squarely within the scope of Rule 403 because, being based upon shockingly partial information, they will cause unfair prejudice, and they will also confuse and mislead the jury." *Id.* at 3. Next, Plaintiff argues that Dr. Aiken's opinions should be excluded because "the paucity of their underlying information makes them unreliable." *Id.* at 4. Plaintiff asserts that Dr.

Aiken's exclusive reliance on written records, and his failure to review any relevant X-rays, CT scans, or MRI images, or physically examine Plaintiff, is a scientifically and medically invalid methodology. *Id.* at 4. In short, Plaintiff contends that Dr. Aiken's opinions, without having physically examined the Plaintiff or reviewed her imagery, amount to unreliable, biased assumptions. *Id.* at 7.

In opposition, Defendants contend that Dr. Aiken is highly qualified to provide an opinion on Plaintiff's medical condition and whether the accident in question caused the need for Plaintiff's neck surgery. (Rec. Doc. 21, at 11.) Defendants argue that the record review performed by Dr. Aiken to formulate his opinions and conclusions is proper, valid, and reliable. *Id.* at 5, 11. According to Defendants, the methodology of physicians relying upon the medical records of other physicians in rendering their opinions is sound and well accepted in the scientific community. *Id.* at 5. Defendants claim that Plaintiff's motion merely attacks the factual merit of Dr. Aiken's opinions. *Id.* at 4. Defendants argue that the fact that Dr. Aiken did not physically examine Plaintiff or view Plaintiff's imagery himself is a topic for cross-examination, not a basis for exclusion. *Id.* at 10.

Moreover, Defendants contend that they were deprived of the opportunity for an independent medical examination that would have allowed for a physical examination of Plaintiff prior to her

4

surgery because Plaintiff did not file the instant lawsuit until five days after she underwent surgery. *Id.* at 2. Defendants argue that a post-surgery physical examination would not have provided sufficient information about the cause of Plaintiff's injury. *Id.* at 3. Thus, Defendants maintain that their sole option was to have a medical doctor review Plaintiff's medical records. *Id.*

## **LEGAL STANDARD**

"Relevant evidence is admissible unless [the Constitution, a federal statute, the Federal Rules of Evidence, or a rule prescribed by the Supreme Court] provides otherwise." Fed. R. Evid. 402. Rule 403 serves as an exception to the admissibility of relevant evidence. It provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. A district court "has broad discretion to weigh the relevance, probative value, and prejudice of the evidence in determining its admissibility under Rule 403." *French v. Allstate Indem. Co.*, 637 F.3d 571, 578 (5th Cir. 2011) (quoting *United States v. Allard,* 464 F.3d 529, 534 (5th Cir. 2006)).

Federal Rule of Evidence 702 imposes a special "gatekeeping" obligation upon a trial judge to ensure that expert testimony or evidence is both relevant and reliable. Under Rule 702, a witness

who is qualified as an expert may testify if: (1) the expert's "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (2) the expert's testimony "is based on sufficient facts or data"; (3) the expert's testimony "is the product of reliable principles and methods"; and (4) the principles and methods employed by the expert have been reliably applied to the facts of the case. Fed. R. Evid. 702. The United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), provides the analytical framework for determining whether expert testimony is admissible under Rule 702. Both scientific and nonscientific expert testimony are subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment of "whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). When expert testimony is challenged under *Daubert*, the party offering the expert's testimony bears the burden of proving its reliability and relevance by a preponderance of the evidence. *Moore v. Ashland Chem. Co.*, 151 F.3d 269, 276 (5th Cir. 1998).

The reliability of expert testimony "is determined by assessing whether the reasoning or methodology underlying the testimony is scientifically valid." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007). A number of nonexclusive

6

factors may be relevant to the reliability analysis, including: (1) whether the technique at issue has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see also Runnels v. Tex. Children's Hosp. Select Plan*, 167 F. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has considerable leeway in determining how to test an expert's reliability.").

<u>**DISCUSSION**</u>

The issue the Court must determine is whether Dr. Aiken's reliance on written medical records, without reviewing diagnostic imagery or physically examining Plaintiff, is a scientifically valid methodology. It is well accepted that an expert witness may offer opinions "that are not based on firsthand knowledge or observation." *Daubert*, 509 U.S. at 592. For example, a physician bases his diagnosis on information from numerous sources and of considerable variety, including reports and opinions from other doctors. Fed. R. Evid. 703 advisory committee's note to 1972

7

proposed rules. Thus, expert witnesses may base their opinions on written medical records.

In the instant case, Dr. Aiken's methodology is scientifically valid. Numerous courts have held that an expert witness need not personally examine a plaintiff in rendering his opinion. *See, e.g.*, *Carroll v. Morgan*, 17 F.3d 787, 790 (5th Cir. 1994) (holding that doctor was qualified under *Daubert* to give an expert opinion as to causation based on his review of plaintiff's medical records, the coroner's records, and a broad spectrum of published materials); *Walker v. Soo Line R. Co.*, 208 F.3d 581, 591 (7th Cir. 2000) (admitting opinion testimony from a physician who performed a records review without an examination, noting that "[t]he lack of an examination . . . does not render [the physician's] testimony inadmissible"); *Sementilli v. Trinidad Corp.*, 155 F.3d 1130, 1134 (9th Cir. 1998) (admitting expert testimony of physician who had not personally examined the plaintiff, noting that the physician's opinions and inferences "were based on his review of [the plaintiff's] medical records, as well as his knowledge, experience, training and education."); *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 807 (3d Cir. 1997) (explaining that in the context of medical testimony, "it is perfectly acceptable, in arriving at a diagnosis, for a physician to rely on examinations and tests performed by other medical practitioners" and the fact that the physician did not himself

perform a physical examination does not necessarily diminish his opinion); *Woods v. Abrams*, No. 06-757, 2008 WL 4950149, at *1 (W.D. Pa. Nov. 17, 2008) ("The case law is clear that an expert witness need not personally examine a plaintiff, and that an examination of the pertinent medical records is 'perfectly acceptable.'").

Furthermore, similar arguments against Dr. Aiken's methodology have been rejected by other courts. For example, in *Breitenbach v. Stroud*, the Louisiana First Circuit Court of Appeal held that Dr. Aiken's testimony was admissible under *Daubert* even though he did not physically examine the plaintiff. 959 So. 2d 926, 936 (La. App. 1 Cir. 2007). In *Breitenbach*, Dr. Aiken was called by the defendants to offer his expert medical opinion regarding the plaintiff's injuries and their relationship, if any, to a motor vehicle accident based on his review of the plaintiff's medical records. *Id.* In concluding that Dr. Aiken's testimony was "clearly admissible," the court noted that the jury was aware that Dr. Aiken did not examine the plaintiff and that Dr. Aiken did not have the benefit of one of the plaintiff's MRI scans or the report of a physician who saw the plaintiff. *Id.* Further, Dr. Aiken was subjected to rigorous cross-examination on his testimony by counsel for the plaintiff. *Id.* Therefore, the court found no error in allowing the jury to evaluate Dr. Aiken's testimony, determine the weight to be given to it, and to thereby accept or reject Dr.

Aiken's opinions. *Id.* The same reasoning applies in the instant case.

Dr. Aiken's testimony is reliable. He is a board-certified orthopedic surgeon, and as such, possesses expertise in the area of physical injuries. Although he did not physically examine the Plaintiff, he did review Plaintiff's medical records pertaining to her neck dating back to 2009. Dr. Aiken's examination of the pertinent medical records is an acceptable methodology; the lack of a physical examination does not render Dr. Aiken's testimony inadmissible.

Plaintiff is free to challenge Dr. Aiken's testimony on cross-examination. *See United States v. Wen Chyu Liu*, 716 F.3d 159, 168 (5th Cir. 2013) ("[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Plaintiff's argument that her three treating neurosurgeons disagree with Dr. Aiken's opinion as to the relationship between Plaintiff's neck surgery and the October 2014 accident does not disqualify Dr. Aiken as an expert; conflict among expert testimony is "grist for the jury." *Carroll*, 17 F.3d at 790.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's *Motion in Limine to Exclude the Medical Record Review and Trial Testimony of David W.*

*Aiken, Jr., M.D.* **(Rec. Doc. 16)** is **DENIED**.

New Orleans, Louisiana, this 13th day of January, 2016.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE